EDMOND G. GIOIELLI, JR. *v.* MALLARD COVE
CONDOMINIUM ASSOCIATION, INC.
(13719)

DUPONT, C. J., and O'CONNELL and HENNESSY, Js.

Submitted on briefs March 17—decision released May 16, 1995

*Frank C. White, Jr.,* filed a brief for the appellant
(defendant).

*Robert L. Curzan* filed a brief for the appellee
(plaintiff).

DUPONT, C. J. The defendant appeals, after a trial
to the court, from a judgment for the plaintiff, grant-

ing him an easement by prescription and enjoining the defendant's interference with that easement.[1]

The defendant claims that the plaintiff did not sustain his burden of proof and that the trial court improperly (1) granted a permanent injunction when the plaintiff had no prescriptive easement,[2] (2) found that any additional use of the right-of-way at issue after 1986 was not an overuse of any previously acquired right, and (3) excluded from evidence an aerial photograph of the property. We affirm the decision of the trial court.

When the factual basis of a trial court decision is challenged, our scope of review is limited to a determination of whether the facts set out in the memorandum of decision are supported by the evidence, or whether, in light of the evidence and pleadings in the whole record, those facts are clearly erroneous. *Powers* v. *Grenier Construction, Inc.*, 10 Conn. App. 556, 558, 524 A.2d 667 (1987). The elements of prescriptive use are questions of fact for the trial court and should not be disturbed absent a finding, upon review, that the facts were legally and logically inconsistent with the subordinate facts. *Wad Realty, Inc.* v. *Licamele*, 1 Conn. App. 371, 372, 472 A.2d 352 (1984). The defendant's claims that the plaintiff did not sustain his burden of proof and that the court should have found an overuse of the right-of-way are attacks on the factual findings of the court from which the court concluded

[1] The defendant filed a motion to strike from the plaintiff's brief and reply brief the plaintiff's alternate grounds for affirmance because, in making those arguments, the plaintiff raised new issues that were not before the trial court. We denied the motion without prejudice. Because we decide this case on the theory of prescriptive easement, which was the theory argued before the trial court, we need not consider the plaintiff's alternate grounds for affirmance.

[2] Because we hold that the plaintiff did establish by a fair preponderance of the evidence that he has a prescriptive easement, we need not address this claim.

that the plaintiff had established an easement by prescription. We review those claims, therefore, against the background of the procedural facts of the appeal and the facts that the court found or could have found reasonably from the testimony and evidence.

The plaintiff filed suit against the defendant because the defendant blocked the plaintiff's access to a portion of a private road known as Carrier Road. The plaintiff claimed that he had acquired a right-of-way over Carrier Road by prescriptive easement. The defendant condominium association is the owner and possessor of a parcel of land that includes Carrier Road. Carrier Road borders the plaintiff's tract of land on the west and the north. Approval for the construction of the Mallard Cove condominium complex was granted on May 23, 1986.

The plaintiff is the owner and possessor of a certain parcel of land known as 27-29 East High Street in the town of East Hampton. The East High Street property is a commercial building that was once partially used as a restaurant, but since 1952 has been used by the plaintiff and his immediate predecessor in title, his father, for a dry cleaning business and a video store. In 1986, the plaintiff improved 27-29 East High Street by adding a second floor. The plaintiff and his father have owned and exercised dominion over this property since 1952. The plaintiff received the property from his father in 1985.

The plaintiff's property also includes a triangular parcel of land acquired in 1952 by the plaintiff's father from the Carrier family by quitclaim deed. This parcel is bound on the west by Carrier Road. Its other boundaries are 27-29 East High Street and Route 66, a public highway that passes the plaintiff's land on the south side. We will refer to both of these parcels as the plaintiff's property. The portion of Carrier Road bordering

the plaintiff's property and leading to Route 66 is the portion of land over which the plaintiff claims to have acquired a prescriptive easement.

In the 1930s and 1940s, the public frequently used Carrier Road for, among other things, access to a casino, a skating rink, and a nearby lake. The public use of Carrier Road declined through the 1940s and 1950s and by the mid 1960s, there was little public use. Previously, there were houses and an automobile dealership on Carrier Road. The residents of those houses and the automobile dealer made frequent use of Carrier Road. Carrier Road has at all times been a private road. There was testimony that both the town and the automobile dealership had plowed the road.

When the plaintiff's father purchased the property in 1952, there was a discernible driveway between his property and Carrier Road.[3] At present, there is a paved driveway. The plaintiff testified that he paved the driveway, but he did not testify as to when.

Since 1952 and until the commencement of this action, the plaintiff and his father openly used the driveway and its access to Carrier Road for the conduct of their businesses. The plaintiff testified that his father began using the road because it was used by the public.[4] The driveway and Carrier Road were also used by customers and by service and delivery people for both ingress and egress to 27-29 East High Street. The trial

---

[3] The plaintiff's predecessors in title originally had a right-of-way across Carrier Road to draw water from a well on the premises located to the west across the roadway from the plaintiff's premises. This right-of-way still exists, but has not been used since the 1980s, when the plaintiff constructed his own well on his premises.

[4] Prior to the purchase of the premises by the plaintiff's father, Carrier Road was used to make deliveries to the building then used as a restaurant. There was also a period of time when Carrier Road was used to make oil deliveries to a tank that serviced the plaintiff's premises and was buried on the west side of the building, partially under Carrier Road. The oil tank was replaced with another underground tank approximately ten years ago.

court found that the second story addition to 27-29 East High Street did not cause a noticeable increase in the use of the driveway and Carrier Road for ingress and egress to the premises, even though the video store has a drop box in the back of the building. The plaintiff testified that a maximum of ten to twelve cars per day use the driveway for access to Carrier Road.

The driveway that extends from the plaintiff's premises to Carrier Road is approximately twenty feet wide. Through the years, it has had its area of abutment with Carrier Road paved by both the town and others. Carrier Road is slightly elevated over the plaintiff's driveway. The driveway is not fused with Carrier Road.

In February, 1986, when the plaintiff filed an application with the East Hampton zoning commission for site plan approval to add a second floor to the premises, the driveway was noted on the zoning records. The plaintiff's application, introduced into evidence during the trial as a public document, included a map that distinctly outlined the driveway and its access to Carrier Road as well as the triangular piece of land bordering Carrier Road, where the plaintiff represented that there were four to five parking spaces for his customers. The plaintiff's application was approved in March, 1986.

In October, 1986, the defendant's predecessor in title filed a declaration for the purpose of creating the Mallard Cove Condominium Complex. The declaration was recorded in the East Hampton land records on November 6, 1986, and was also introduced into evidence during the trial as a public document. The real property described in the declaration included the private roadway known as Carrier Road. The declaration included several surveys and attachments. One survey lists easements and has the notation "Rights to use private drive for egress to East High Street in favor of Gioielli." The

record does not indicate who made that notation on the document. East High Street, also known as Route 66, is the roadway that runs in front of the plaintiff's premises.

Neither the plaintiff nor his predecessor in title ever inquired or sought permission to use Carrier Road, nor was permission ever granted by anyone to the plaintiff to use this roadway for access to the rear of the plaintiff's property. The plaintiff testified that he had once been approached by a local land developer about the plaintiff's purchasing a right-of-way.[5] The plaintiff declined the offer, believing that he and his father had used Carrier Road for so long that he did not need one.

In 1992, the defendant attempted to block the plaintiff's driveway, and consequently the plaintiff's access to Carrier Road, by planting trees on Carrier Road. Prior to the defendants' actions in 1992, Carrier Road was never blocked and the plaintiff was never denied access to Carrier Road. The defendant attempted to break up the pavement at the end of the driveway with a jackhammer to plant the trees. The plaintiff's father called the police. The plaintiff immediately obtained an injunction against the defendant and, thereafter, brought this action. The plaintiff testified that for a brief time after he had told the defendant not to break up the driveway, the defendant placed sawhorses in front of the driveway to prevent access to and from the plaintiff's premises via Carrier Road. The plaintiff removed the sawhorses and eventually the defendant stopped placing them there.

At trial, after the conclusion of the plaintiff's evidence, the defendant made a motion to dismiss for failure to make a prima facie case. The court denied the

---

[5] The plaintiff's testimony on this point does not reveal the year he was approached by the developer, nor whether the developer owned Carrier Road.

motion. The defendant thereafter did not produce any of its own evidence, although it had tried unsuccessfully to introduce an aerial photograph of the plaintiff's premises during the cross-examination of the plaintiff.

The trial court found that the plaintiff's use of the portion of Carrier Road abutting the plaintiff's driveway was open, visible, and continuous since 1952, and used under a claim of right to the extent that it put the owner of the fee to Carrier Road on notice of the distinct and adverse use being made of this southern portion of Carrier Road by the plaintiff and his predecessors in title. The trial court also found that there is a discernible, regularly used route of travel followed by the plaintiff, its customers, and others, on the portion of Carrier Road leading to the plaintiff's driveway, for the distinct purpose of access to the plaintiff's property. The court also found that anyone traveling on Carrier Road could easily distinguish the driveway entrance to the plaintiff's property as a distinct and separate use of that portion of Carrier Road.

In accordance with these findings, the court concluded that the plaintiff had established by a fair preponderance of the evidence that it had acquired an easement by prescription to enter and use the private roadway known as Carrier Road from the plaintiff's established driveway on the northern portion of its premises at the point where the driveway widens and enters Carrier Road. The court therefore ordered that a restraining order and permanent injunction be granted to prevent interference "in any way, shape, or form" by the defendant and its successors and assigns, with the rights of the plaintiff to enter on and use Carrier Road for ingress and egress from its premises.

# I

## PRESCRIPTIVE EASEMENT

General Statutes § 47-37 provides: "No person may acquire a right-of-way or any other easement from, in, upon or over the land of another, by the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years." In Connecticut, therefore, a prescriptive easement is established by proving an open, visible, continuous and uninterrupted use for fifteen years made under a claim of right. *McCullough* v. *Waterfront Park Assn., Inc.*, 32 Conn. App. 746, 753, 630 A.2d 1372, cert. denied, 227 Conn. 933, 632 A.2d 707 (1993). The standard of proof that is required is a fair preponderance of the evidence. Id.

"A use by express or implied permission or license cannot ripen into an easement by prescription. . . . Where the use depends on authority from the owner, it involves a recognition of his right to terminate, which negates the adverse character of the use." (Citation omitted; internal quotation marks omitted.) *Klar Crest Realty, Inc.* v. *Rajon Realty Corp.*, 190 Conn. 163, 168, 459 A.2d 1021 (1983). "Where . . . there is neither proof of express permission of the landowner, nor proof of an express claim of right by the person using the way, the character of the use, whether adverse or permissive, is to be determined as an inference from the circumstances of the parties and the nature and character of the use." *DiSorbo* v. *Grand Associates One Ltd. Partnership*, 8 Conn. App. 203, 206, 512 A.2d 940 (1986).

"Where the use of a right-of-way is in common with the public, the common use is considered to negate a presumption of grant to any individual use. In such a case, the individual user must, in order to establish an independent prescriptive right, perform some act of

which the servient owner is aware and which clearly indicates his individual claim of right. . . . Whether the requirements for such a right have been met in a particular case presents a question for the trier of facts after the nature and character of the use and the surrounding circumstances have been considered." (Citation omitted.) *Krohner* v. *Seyburt Associates Ltd. Partnership,* 20 Conn. App. 298, 301, 566 A.2d 995 (1989). A finding that the use made by the claimant and his predecessors in title was not different from that made by the general public is fatal to the establishment of any prescriptive right in the claimant. *Peterson* v. *Ramcke,* 140 Conn. 202, 207, 99 A.2d 94 (1953). "In such cases, the trier's determination of fact will be disturbed only in the clearest of circumstances, where its conclusion could not reasonably be reached." *Robert S. Weiss & Co.* v. *Mullins,* 196 Conn. 614, 619, 495 A.2d 1006 (1985).

We agree with the trial court that the use of the portion of Carrier Road abutting the plaintiff's driveway by the plaintiff, his employees, customers, and delivery people to gain access to 27-29 East High Street is a sufficiently distinct use from that of the public to constitute an independent claim of right by the plaintiff. See *Missionary Society* v. *Coutu,* 134 Conn. 576, 583, 59 A.2d 732 (1948). Even during the period of frequent public use, the use of Carrier Road by the plaintiff and his father was distinct from that of the public. Since 1952, the plaintiff and his father have continued to use Carrier Road for access to and from 27-29 East High Street for business purposes. The public, when it used Carrier Road, used it for access to places of recreation. There are no longer homes or an automobile dealership on Carrier Road, and, when there were, the use of Carrier Road to access those places was also a use distinct from that of the plaintiff. The plaintiff's use of Carrier Road has always been in conjunction with

the operation of the businesses located at 27-29 East High Street, and we hold that that is a sufficiently distinct use to constitute an independent claim of right.

We hold, therefore, that the plaintiff did sustain his burden of proof as to his acquisition of a prescriptive easement over Carrier Road.

The defendant also claims that even if the plaintiff did sustain his burden of proving that he had a prescriptive easement, the trial court should have found that any additional use of the right-of-way after the 1986 addition of a second story to 27-29 East High Street was an overuse of any previously acquired right. The defendant claims that the addition of a second story to 27-29 East High Street and the placement of a video drop box at the rear of 27-29 East High Street has resulted in an increased use of the right-of-way. The defendant argues that because the plaintiff has owned the property only since 1985, any right-of-way found by the trial court had to be based on the use of that right-of-way by the plaintiff's father.

"[T]he right of an owner of an easement and the right of the owner of the land are not absolute, but are so limited, each by the other, that there may be a reasonable enjoyment of both." (Internal quotation marks omitted.) *McCullough* v. *Waterfront Park Assn., Inc.,* supra, 32 Conn. App. 756, quoting 2 G. Thompson, Real Property (1980 Replacement) § 427, p. 663. "An easement created by prescription is more limited than an easement by grant. *Lichteig* v. *Churinetz,* 9 Conn. App. 406, 410, 519 A.2d 299 (1986)." *McCullough* v. *Waterfront Park Assn., Inc.,* supra, 756. "[W]hen an easement is established by prescription, the common and ordinary use which establishes the right also limits and qualifies it. . . . The use of an easement must be reasonable and as little burdensome to the servient estate as the nature of the easement and the purpose will per-

mit." (Citations omitted; internal quotation marks omitted.) *Kuras* v. *Kope*, 205 Conn. 332, 341, 533 A.2d 1202 (1987).

Even though, however, "the common and ordinary use which establishes the prescriptive right also limits and qualifies it, as one court aptly observed, 'the use made during the prescriptive period does not fix the scope of the easement *eternally*.' " (Emphasis added.) Id., 342, quoting *Glenn* v. *Poole*, 12 Mass. App. 292, 293, 423 N.E.2d 1030 (1981). One commentator has observed that if the "common and ordinary use" rule " 'were applied with absolute strictness, the right acquired would frequently be of no utility whatsoever. A right-of-way, for instance, would, as has been judicially remarked . . . be available for use only by the people and the vehicles which have passed during the prescriptive period. But the rule is not applied with absolute strictness.' " *Kuras* v. *Kope*, supra, 205 Conn. 342, quoting 4 H. Tiffany, Real Property (3d Ed. 1975) § 1209, p. 1039. " 'The problem is to ascertain the limits of permissible variation.' " *Kuras* v. *Kope*, supra, 343, quoting 3 R. Powell, Real Property (1987 Rev.) ¶ 416, pp. 34-204–34-205.

"[O]ne who has an easement by prescription has the right to do such acts that are reasonable and necessary to effectuate that party's enjoyment of the easement unless it unreasonably increases the burden on the servient tenement." *McCullough* v. *Waterfront Park Assn., Inc.*, supra, 32 Conn. App. 756. " 'An unreasonable increase in burden is such a one as it is reasonable to assume would have provoked the owner of the land being used to interrupt the use had the increase occurred during the prescriptive period.' " Id., quoting 5 Restatement, Property § 479, comment (c), p. 3003 (1944). " '[W]ithin reasonable limits, the possessor of the servient tenement is required to anticipate the future and guard against it. Obviously, he should

not be required to guard against the unforeseeable. Hence, prescriptive interests do not include the privilege to make uses necessitated by a development of the dominant tenement not foreseeable during the prescriptive period as a normal development of that tenement.' " *Kuras* v. *Kope,* supra, 205 Conn. 350, quoting 5 Restatement, supra, p. 3003. "This is not to overlook, however, that '[t]he owner of an easement has all rights incident or necessary to its proper enjoyment, [although] nothing more.' " *Kuras* v. *Kope,* supra, 341.

"A normal development is one that accords with common experience and, therefore, one that might reasonably have been foretold." 5 Restatement, Property § 479, comment (a) (1944). Such uses, however, must be consistent with the pattern formed by the adverse use by which the prescriptive easement was created." *Kuras* v. *Kope,* supra, 205 Conn. 350.

"The decision as to what would constitute a reasonable use of a right-of-way is for the trier of fact whose decision may not be overturned unless it is clearly erroneous." *Somers* v. *LeVasseur,* 230 Conn. 560, 564, 645 A.2d 993 (1994). Because the right-of-way here has always been used by employees, customers and delivery and service persons, we agree with the trial court that any use of the right-of-way connected with the addition of a second story to 27-29 East High Street and the video drop box does not exceed the scope of the prescriptive easement and was not an overuse of the easement.[6]

---

[6] The plaintiff testified that there was no noticeable increase in the use of the right-of-way after the addition of the second floor and video box drop to 27-29 East High Street. The plaintiff testified that even with these improvements, a maximum of ten to twelve cars use the right-of-way everyday. The plaintiff also testified that the video box drop is infrequently used, because customers of the video store normally park in the front of 27-29 East High Street, and, therefore, do not use the right-of-way.

## II

### EVIDENTIARY CLAIM

The defendant claims that he should have been allowed to admit into evidence an aerial photograph of the plaintiff's property. The plaintiff agreed that the photograph was a fair and accurate representation of his property, but he could not accurately state the year the photograph was taken.[7] The plaintiff's counsel objected to the admission of the photograph on the basis of lack of foundation. The court told the defendant to make a claim or the court would sustain the objection because aerial photographs have some "peculiarities on having their authenticity established."

The defendant then further questioned the plaintiff about whether, in the plaintiff's opinion, the photograph was authentic or had been altered in any way. The plaintiff's counsel objected again, this time on the basis that without an accurate time frame, the probative value of the photograph was unclear. The court agreed that a time frame was necessary to determine the relevancy of the photograph and sustained the objection. The defendant took an exception.

The defendant correctly notes that in Connecticut the testimony of the photographer is not essential for the authentication of a photograph, as long as other evidence is produced that satisfies the court. *Cagianello* v. *Hartford*, 135 Conn. 473, 475, 66 A.2d 83 (1949). No one at the trial court proceedings disputed that the proffered photograph was an accurate picture at some point in time of the plaintiff's premises. The dispute was over the date of the photograph and, therefore, its relevancy. The defendant made no offer of proof as to when the photograph was taken or why it was

---

[7] The plaintiff said it "seemed" to be a photograph taken after 1952 and that it was "hard to say" whether it was taken before 1970.

relevant and makes no argument in his brief as to how he was harmed by the trial court's ruling that it could not be admitted.

"Our rules require that counsel clearly state the grounds upon which he is relying either to admit or to object to . . . proffered evidence. . . . Once the court stated that the [evidence] would be excluded because it was irrelevant . . . it was incumbent upon the defendant, to preserve the claim on appeal, to point out how the testimony would be relevant . . . ." (Citations omitted.) *DiSorbo* v. *Grand Associates One Ltd. Partnership,* supra, 8 Conn. App. 208–209.

Furthermore, " '[t]he trial court has broad discretion to determine the relevancy of evidence, and we will not disturb a trial court's ruling on the admissibility of evidence in the absence of a clear abuse of discretion.' " *State* v. *Gant,* 231 Conn. 43, 58, 646 A.2d 835 (1994).

Because the defendant provided neither the trial court nor this court with any argument as to how the aerial photograph would have defeated the plaintiff's claim of a prescriptive easement, we find no error in the court's ruling that the photograph was inadmissible.

The judgment is affirmed.

In this opinion the other judges concurred.